In the District Court of the United States
For The District of South Carolina
BEAUFORT DIVISION

RECEIVED
USDC CLERK, CHARLESTON, SC
2006 MAY 31  A 10: 40

| | |
|---|---|
| Frank E. Hoffman, ) | Civil Action No. 9:05-1773-PMD-GCK |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **REPORT AND RECOMMENDATION** |
| Cindy Tuten, Bernardo Parina, M.D. ) | **OF THE MAGISTRATE JUDGE** |
| and NFN Bush; ) | |
| ) | |
| Defendants. ) | |

## I. INTRODUCTION

The Plaintiff, Frank E. Hoffman ("Plaintiff" or "Hoffman"), is currently a resident of Palm Beach County, Florida. Plaintiff is a former federal prisoner, having been incarcerated in the Federal Correctional Institution in Estill, South Carolina ("FCI Estill") at the time of the alleged events giving rise to this action. Proceeding *pro se*, he filed this action pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), seeking monetary damages from the above-captioned defendants, Cindy Tuten, Phlebotomist ("Ms. Tuten"), Bernardo Parina, M.D. Chief Physician ("Dr. Parina"), and Jackie Bush, Medical Administrator ("Dr. Bush"). Plaintiff alleges that the defendants were employed by the Bureau of Prisons (the "BOP") and worked at the Medical Clinic at FCI Estill at the time of Plaintiff's incarceration. Plaintiff filed this action against Ms. Tuten, Dr. Parina, and Dr. Bush in their individual and official capacities.

Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(e), D.S.C., the undersigned United States Magistrate Judge is authorized to review all pretrial matters in cases involving *pro se* litigants, and submit findings and recommendations to the District Court.

## II. *PRO SE* COMPLAINT

Plaintiff is a *pro se* litigant, and thus his pleadings are accorded liberal construction. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (*per curiam*); *Estelle v. Gamble*, 429 U.S. 97 (1976); *Haines v. Keener*, 404 U.S. 519 (1972); *Loe v. Armistead*, 582 F. 2d 1291 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir.), *cert. denied, Leeke v. Gordon*, 439 U.S. 970 (1978). Under established local procedure in this judicial district, a careful review has been made of the *pro se* complaint herein pursuant to the procedural provisions of the Anti-Terrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, Title I, § 104, 110 Stat. 1214. This review has been conducted in light of the following precedents: *Denton v. Hernandez*, 504 U.S. 25 (1992); *Neitzke v. Williams*, 490 U.S. 319, 324-25 (1989); *Haines v. Keener*, 404 U.S. 519 (1972); *Nasim v. Warden, Maryland House of Correction*, 64 F.3d 951 (4th Cir. 1995) (*en banc*), *cert. denied*, 516 U.S. 1177 (1996); *Todd v. Baskerville*, 712 F.2d 70 (4th Cir. 1983).



*Pro se* pleadings are held to a less stringent standard than those drafted by attorneys. *Hughes*, 449 U.S. 5 (1980). Even under this less stringent standard, however, the *pro se* complaint nonetheless may be subject to summary dismissal. The mandated liberal construction afforded to *pro se* pleadings means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so, but a district court may not rewrite a petition to include claims that were never presented. *Barnett v. Hargett*, 174 F.3d 1128 (10th Cir. 1999). Likewise, a court may not construct the plaintiff's legal arguments for him (*Small v. Endicott*, 998 F.2d 411 (7th Cir. 1993)) or "conjure up questions never squarely presented" to the court. *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985), *cert. denied*, 475 U.S. 1088 (1986).

The requirement of liberal construction, however, does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim currently cognizable in a federal district court. *Weller v. Dep't of Social Services*, 901 F.2d 387 (4th Cir. 1990).

### III. FACTUAL BACKGROUND

Plaintiff alleges that during the period of his incarceration at FCI Estill, and on or after July 3, 2002, he was diagnosed with Hepatitis C by the Medical Clinic. Plaintiff alleges the diagnosis was based upon documented medical reports from the laboratory or laboratories which examined Plaintiff's "fluid" samples, which were collected and submitted by the Medical Clinic.[1]

Plaintiff alleges that it is "impossible for the Plaintiff to have contracted this Hepatitis C, except for the deliberate indifference or negligence of Defendant [Ms. Tuten], the phlebotomist who periodically drew blood from the Plaintiff while he was incarcerated at FCI Estill."[2] Plaintiff alleges that Ms. Tuten drew blood from him using syringes that already had been unpackaged before he arrived in the room at the Medical Clinic where his blood was to be drawn; although he "insisted" that Ms. Tuten draw blood using "clean" syringes which had been unpackaged in his presence, Ms. Tuten "refused, threatening the Plaintiff with severe punishment if he did not submit to her use of syringes which were unpackaged out of his presence."[3] Plaintiff claims he contracted Hepatitis C because one

---

[1] See Complaint [1-1] at pages 1-2.

[2] See Complaint at p. 2. According to a physician's statement submitted by the Defendants, Plaintiff required periodic blood work because he had a history of testing positive on tuberculin skin tests, and was followed by the Chronic Care Clinics at FCI-Estill for that condition. See Declaration of Zoltan Vendel, M.D., Clinical Director at FCI-Estill. [28-2]

[3] *Id.*

or more of the syringes used on him had been used previously on one or more other inmates at FCI Estill.

Plaintiff further contends that after he had been diagnosed with Hepatitis C, Dr. Parina and Dr. Bush failed to treat him with medication to alleviate the advance of the disease. Furthermore, Plaintiff states he has been tested twice by independent laboratories for Hepatitis C since his release from FCI Estill and has tested positive for Hepatitis C. Plaintiff contends he suffers from physical symptoms of Hepatitis C, as well as from emotional distress and suffering due to knowing the Hepatitis C was "unnecessarily inflicted upon him by [Ms. Tuten], and which [Dr. Parina] and [Dr.] Bush did nothing to alleviate."[4]



Plaintiff alleges that the Defendants individually or collectively violated his Eighth Amendment rights by their deliberate indifference to his physical and mental well-being, first by "inflicting upon him Hepatitis C, and then by deliberately refusing to treat him for the same." Plaintiff also has set forth a supplemental state-law claim for negligence pursuant to 28 U.S.C. § 1367, alleging that the Defendants, individually or collectively, were negligent in transmitting Hepatitis C to him, or in failing to treat him for it after they knew that he tested positive for it. Plaintiff requests a jury trial, and seeks compensation from each Defendant in the amount of $250,000.00 for his physical harm, and $250,000.00 for his emotional harm, along with an award of punitive damages to be determined by the court.[5]

---

[4] See Complaint at p p. 2-3. Although the Plaintiff filed a Notice of Intent to Submit an Amended Complaint [7-1], an Amended Complaint never was filed.

[5] See Complaint [1-1] at ¶¶ 3-4. Plaintiff also sought injunctive relief to the extent that "no one at the [Medical Clinic] be permitted to extract blood from any inmate in the future, without unpackaging in the presence of such an inmate, the syringe to be employed for this purpose." See Id. at p. 4. However, because Plaintiff is no longer incarcerated at FCI Estill, his request for injunctive relief is moot. Although it

## IV. PROCEDURAL HISTORY

Plaintiff filed this action on June 21, 2005. [1-1] An Order authorizing service of process by the clerk was issued on July 18, 2005. [5-1; 6-1] Service was to be made on or before October 21, 2005, pursuant to Rule 4(m) of the Federal Rules of Civil Procedure. As none of the defendants had been served by that deadline, on October 27, 2005 the undersigned issued an Order allowing the Plaintiff an additional ten days to properly effect service upon the Defendants, and warning the Plaintiff the case would be dismissed for lack of prosecution if the Defendants were not served in a timely manner as required by Rule 4(m) of the Federal Rules of Civil Procedure. [9-1] The Plaintiff failed to provide the court with evidence that service had been accomplished. Accordingly, on November 9, 2005, the undersigned filed a Report and Recommendation which recommended that this action be dismissed for lack of prosecution. [10-1]

Plaintiff filed Objections to the Report and Recommendation on November 18, 2005, stating that he had not received a copy of the October 27, 2005 Order, presumably due to the disruption in Florida caused by Hurricane Wilma. Plaintiff attached to his



---

is possible for an inmate to avoid dismissal on the grounds of mootness upon a showing that his injury is "capable of repetition, yet evading review," as that doctrine first was enunciated in *Southern Pacific Terminal Co. v. ICC*, 219 U.S. 498 (1911), this doctrine has developed over time to mean that in the absence of a class action, the "capable of repetition, yet evading review" doctrine has been limited to the situation in which two elements are present: (1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again. *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975) *(per curiam)*. The application of this doctrine affords no relief to Plaintiff, because, in the instant case, although it may be true that the first prong of the test could be shown, it remains that Plaintiff has been released from FCI Estill, and there is no demonstrated probability that he will again be incarcerated and subjected to the same alleged actions of which he complains. Thus, his request for injunctive relief is moot. *See Slade v. Hampton Roads Regional Jail*, 407 F.3d 243, 249 (4th Cir. 2005) ("Because we presume that Slade will abide by the criminal laws of Virginia in the future, we do not believe there is a reasonable probability that he will return to the Jail as a pretrial detainee. Accordingly, Slade's claim for injunctive relief is moot.").

Objections the Proofs of Service for Ms. Tuten and Dr. Bush, each of whom had been served on October 14, 2005, within the 120 days as required by Rule 4(m), Fed.R.Civ. P. [12-1; 13-1] Plaintiff also requested an additional sixty (60) days in which to serve Dr. Parina, whom it was believed had relocated to Georgia.[6] [14-1]

Despite the fact that service had not been made on Dr. Parina, an answer was filed on behalf of the three named defendants (the "Defendants") on December 14, 2005. The answer contained a general denial as to the allegations in the Complaint, and averred that Plaintiff's medical record indicated that he was diagnosed with Hepatitis C and was informed of that diagnosis some time between March 1, 2002 and March 18, 2002. Furthermore, the Defendants denied that Plaintiff contracted Hepatitis C through any actions, deliberate indifference, or negligence of the Defendants; they denied they failed to treat Plaintiff's medical condition; and they specifically denied that they violated any of Plaintiff's constitutional rights. The Defendants further claimed they were entitled to the defense of qualified immunity, and also stated that the action should be dismissed on the grounds that the applicable three year state of limitations for Plaintiff's action expired no later than March 18, 2005, while Plaintiff did not file suit until June 21, 2005. [15-1]



The Plaintiff replied to the Answer on January 13, 2006 [16-1], noting that Defendants failed to submit any medical records to substantiate their claim that Plaintiff had been diagnosed with Hepatitis C at some time between March 1 and March 18, 2002. Plaintiff further noted that even assuming that the Defendants diagnosed Plaintiff with Hepatitis C and so informed him, the Defendants' Answer failed to address Plaintiff's claim that the Defendant failed to treat Plaintiff for Hepatitis C after they became aware of his condition. Furthermore, Defendants' Answer failed to address Plaintiff's claim that

---

[6] According to the Affidavit of Non-Service, Dr. Parina retired from FCI-Estill and resides in Rincon, GA. [14-1]

Tauten used "dirty" needles to draw blood from Plaintiff. Finally, Plaintiff argued that there were genuine issues of material fact regarding deliberate indifference (instead of mere negligence) and that Defendants were not entitled to qualified immunity because Plaintiff enjoyed an established right to adequate medical care by the Defendants. [16-1]

On January 20, 2006, the Honorable Patrick Michael Duffy, United States District Judge for the District of South Carolina, issued an Order granting Plaintiff an extension of time until February 10, 2006 to effect service of process upon Dr. Parina, and remanding the case to the undersigned Magistrate Judge for further disposition. [17-1] Thereafter, on February 8, 2006, the undersigned filed an Order stating that any dispositive motion must be filed within ten (10) days.[7] [19-1]



Thereafter, on February 22, 2006, the Defendants filed a Motion to Dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, and a Memorandum in Support of the Motion to Dismiss, along with the affidavit of Roy Lathrop. [21-1] On February 23, the undersigned issued an Order pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), notifying Plaintiff of the dismissal procedure and the possible consequences if he failed to adequately respond to the Motion to Dismiss within thirty-four (34) days. [22-1] On March 23, 2006, Plaintiff filed a Preliminary Response in Opposition to Defendants' Motion as well as a Motion for an extension of time in which to respond. [23-1; 24-1] The Defendants filed their Opposition to Plaintiff's request for an extension of time on March 24, 2006. [25-1] Thereafter, on March 29, 2006

---

[7]   As the court's February 2006 Order stated, the court previously had filed an Order on July 18, 2005 which authorized service of process on the Defendants by the Clerk of Court and apprised the Defendants that all dispositive motions were to be filed no later than forty-five (45) days after the Defendants' Answer was filed. [5-1] That order, and the deadline set forth therein is a standard form order which the court consistently issues in cases where the defendant or defendants will be represented by the United States Attorney for the District of South Carolina.

the undersigned granted Plaintiff's Motion for an extension of time in which to respond to Defendants' motion. [26-1]

Plaintiff filed his Substantive Response in Opposition to Defendants' Motion to Dismiss on April 19, 2006 [27-1] and the Defendants filed their Reply on April 28, accompanied by a declaration of Dr. Zoltan Vendel, the Clinical Director at FCI-Estill. [28-1] In response, on May 1, 2006, the Plaintiff filed: (1) a Reply to Defendants' Response; (2) a Motion to add Dr. Zoltan Vendel as a defendant; and (3) a Motion for Summary Judgment. [29-1; 30-1] On May 19, 2006, the Defendants filed a Response in Opposition to Plaintiff's Motion to add Dr. Vendel as a defendant and Motion for Summary Judgment. [31-1] Plaintiff did not file a reply. Accordingly, the case is now ripe for disposition by the undersigned United States Magistrate Judge.

## V. STANDARDS OF REVIEW



The Defendants in this case have filed a Motion to Dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure on the grounds that "the court lacks subject matter jurisdiction as the statute of limitations has expired, Defendant Parina has not been served with in [sic] the time required by the Rule and extended by this Court, the Defendants were all acting within their official capacities and the defendants are entitled to qualified immunity."[8]

With respect to Defendants' Rule 12(b)(1) motion, it is the recommendation of the court that Defendant Parina be dismissed because he was not timely served. *See* Rule 4(m); *see also* Plaintiff's statement that he "elected not to served Bernardo Parina, M.D." [27-1]

---

[8] *See* Defendants' Motion to Dismiss [21-1] at p. 1.

Accordingly, the substance of the Defendants' motion to dismiss will focus on the Defendants Ms. Tuten and Dr. Bush. When ruling on a motion to dismiss a claim, a court must assume all facts well-pleaded by the plaintiff to be true. *Walker v. True*, 399 F.3d 315, 319 (4th Cir. 2005), *citing Rouse v. Lee*, 339 F.3d 238, 248 n. 8 (4th Cir. 2003). Furthermore, a motion to dismiss for failure to state a claim may only be granted as a matter of law "if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). When a motion to dismiss pursuant to Rule 12(b)(6) is accompanied by affidavits, exhibits, and other documents to be considered by the Court, the motion will be construed as a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56©. In applying the standard for summary judgment, the court must review all evidence "in the light most favorable to the nonmoving party." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In *Celotex*, the Supreme Court held that the moving party bears the initial burden of informing the court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. *Celotex*, 477 U.S. at 323. Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Electric Industrial Co. v. Zenith*

*Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmoving party must present specific facts showing the existence of a genuine issue for trial. *Id.* This means that the "party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The "mere existence of a scintilla of evidence" favoring the non-moving party will not prevent the entry of summary judgment. *Anderson*, 477 U.S. at 248.

## VI. ANALYSIS

### A. The Bivens Action

In *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 397 (1971), the Supreme Court established a direct cause of action under the Constitution of the United States against federal officials for the violation of federal constitutional rights. In *Bivens*, the Supreme Court held that a violation of the Fourth Amendment by a federal agent acting under color of his authority gives rise to a cause of action for damages, despite the absence of any federal statute creating liability. *Bivens*, 403 U.S. at 389. The *Bivens* concept was extended in *Carlson v. Green*, 446 U.S. 14 (1980) to recognize an implied action for damages against federal prison officials for violations of the Eighth Amendment. *Holly v. Scott*, 434 F.3d 287, 289 (4th Cir. 2006).



A *Bivens* claim is analogous to a claim under 42 U.S.C. § 1983; federal officials may not be sued under 42 U.S.C. § 1983 because they do not act under color of *state* law. *See Harlow v. Fitzgerald*, 457 U.S. 800, 814-820 & n. 30 (1982). *Harlow*, which is often cited for the principle of the qualified immunity of state officials for acts within the scope of their employment, was brought against a federal official. In footnote 30 of the *Harlow* opinion, the Supreme Court stated that *Harlow* was applicable to state officials sued under

42 U.S.C. § 1983. In other words, case law involving Section 1983 claims is applicable in *Bivens* actions and *vice versa*. *Farmer v. Brennan*, 511 U.S. 825 (1994).

In order to state a claim for a *Bivens* action, a plaintiff must set forth facts detailing a deprivation of a federally protected right performed by "a federal agent acting under color of federal authority." *Bivens*, 403 U.S. at 389. "Employees of the federal government are clearly proper *Bivens* defendants, as they operate as federal agents and exert federal authority." *Lawson v. Liburdi*, 114 F.Supp.2d 31, 37 (DRI 2000). Defendants admit that they are federal employees, and thus are amenable to suit under *Bivens*.[9]



Plaintiff sues the Defendants in both their individual and official capacities.[10] It is well-settled that a *Bivens* action against federal agents in their official capacities for money damages based on allegations of constitutional violations is barred by the doctrine of sovereign immunity. *See Funches v. Wright*, 1986 WL 17980, at *1 (4th Cir. Nov. 6, 1986) (holding that in a *Bivens* action, plaintiffs must sue federal officials in their individual, and not official, capacities); *Berger v. Pierce*, 933 F.2d 393, 397 (6th Cir.1991) (same). And, just as there is no official capacity liability, the Fourth Circuit has made clear that in a *Bivens* suit, there is no respondeat superior liability. *See Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001), *citing Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995). Thus, "liability is personal, based on each defendant's own constitutional violations." *Id.* In the present case, Plaintiff alleges that Ms. Tuten transmitted Hepatitis C to him through the use of inflected needles, and that Dr. Bush failed to treat Plaintiff's Hepatitis C after it was diagnosed. However, Plaintiff's complaint also alleges that the Defendants were acting at all times in their official capacities, as employees of FCI Estill.

---

9    *See* Defendants' Motion to Dismiss [21-1] at p. 3.

10   *See* Caption of Complaint. [1-1]

### B. Exhaustion

As a threshold matter, it must be noted that this suit is not subject to dismissal for Plaintiff's apparent failure to exhaust his administrative remedies prior to filing suit. Although Section 1997e(a) of the Prison Litigation Reform Act ("PLRA") (42 U.S.C. § 1997e(a)) provides that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." It is beyond dispute that the plaintiff's complaint is an action "with respect to prison condition conditions" under Section 1997e(a), Plaintiff is no longer incarcerated, and therefore could not pursue the BOP's grievance procedure and could not exhaust his administrative remedies.

### C. The Statute of Limitations

Plaintiff alleges that his action arises under the Eighth Amendment and that jurisdiction is predicated on 28 U.S.C. §§ 1331 and 1343. Since neither the Eighth Amendment nor the federal statutes contain a statute of limitations, the most closely analogous state statute of limitations applies. *Blanck v. McKeen*, 707 F.2d 817, 819 (4th Cir 1993) (*per curiam*), citing *Johnson v. Railway Express Agency*, 421 U.S. 454, 462 (1975). It appears that the parties agree that South Carolina's three-year statute of limitations applies in the present case.[11]



Under South Carolina's statute of limitations, "all actions initiated under Section 15-3-530(5) must be commenced within three years after the person knew or by the exercise of reasonable diligence should have known that he had a cause of action." S.C.

---

[11] See Defendants' Motion to Dismiss [21-1] at p. 7 *and* Plaintiff's Substantive Response to Defendants' Motion to Dismiss [27-1] at p. 4.

Code Ann. § 15-3-535. South Carolina Code §15-3-530(5), in turn, applies to "an action for assault, battery, or any injury to the person or rights of another, not arising on contract and not enumerated by law, and those provided for in Section 15-3-545." Finally, Section 15-3-545 addresses medical malpractice actions and provides, in pertinent part:

> In any action . . . to recover damages for injury to the person arising out of any medical . . . . treatment or omission . . . .acting within the scope of his profession must be commenced within three years from the date of the treatment, omission, or operation giving rise to the cause of action or three years from date of discovery or when it reasonably ought to have been discovered, not to exceed six years from date of occurrence, or as tolled by this section.

With respect to the definition of reasonable diligence, the South Carolina Supreme Court has explained:

> [t]he exercise of reasonable diligence means simply that an injured party must act with some promptness where the facts and circumstances of an injury would put a person of common knowledge and experience on notice that some right of his has been invaded or that some claim against another party might exist. The statute of limitations begins to run from this point and not when advice of counsel is sought or a full-blown theory of recovery developed. *Wiggins v. Edwards*, 314 S.C. 126, 442 S.E.2d 169, 170 (1994), quoting *Snell v. Columbia Gun Exchange, Inc.*, 276 S.C. 301, 278 S.E.2d 333, 334 (1981)). Thus, under South Carolina case law, after a plaintiff has discovered or should have discovered his injury, his claims arising out of that injury have accrued and the three-year statute of limitations begins running, even if he does not know the full extent of his injuries.

While the statute may be tolled due to disability, incarceration is not considered such a disability. *See* S.C. Code §15-3-40. Since Plaintiff filed his lawsuit on June 21, 2005, Defendants maintain that the court should grant summary judgment on Plaintiff's claims because they are untimely under South Carolina's three-year statute of limitations governing personal injury actions. However, "'[t]he burden of establishing the bar of the statute of limitations rests upon the one interposing it, . . . and where the testimony is conflicting upon the question, it becomes an issue for the jury to decide.'" *Little v. Brown & Williamson Tobacco Corp.*, 243 F.Supp.2d 480, (D.S.C. 2001), *quoting Brown v. Finger*, 240 S.C. 102, 124 S.E.2d 781, 786 (1962) (citations omitted).

In the present case, Plaintiff contends that his medical records from March 2002 do not show that he was informed of his diagnosis of Hepatitis C, or whether his follow-up treatment on June 18, 2002 was for his known condition of tuberculosis or his suspected condition of Hepatitis C.[12] He further alleges he was not tested for Hepatitis C until June 26, 2002 and that the results of his tests were not known to the FCI Medical Clinic until July 1, 2002 at the earliest.[13] Plaintiff alleges that he became aware of the injury on July 3, 2002.[14] Plaintiff alleges he timely filed his complaint within the three-year statute of limitations, as it was filed June 21, 2005.

However, Plaintiff's medical record for March 1, 2002, indicates that Plaintiff underwent lab tests were done on January 24, 2002.[15] According to Plaintiff's official medical records, Plaintiff became aware that he tested positive for Hepatitis C on March 1, 2002.[16] Indeed, Plaintiff's March 18, 2002 medical record shows that Plaintiff had tested positive for Hepatitis C by screening (E/A) and he was advised that the RIBA test was being ordered to confirm the diagnosis and that his INH was discontinued. The assessment portion of the record indicates "Chronic Hepatitis C."[17] Also on March 18, the "Plan" portion of Plaintiff's medical records indicate that Plaintiff received patient education and understood those topics of education.[18] Thus, Plaintiff knew, at the very latest, on March



---

[12]   See Plaintiff's Response [27-1] at p. 3.

[13]   Id.

[14]   See Complaint [1-1] at p. 1.

[15]   See Defendants' Exhibit 1, Attachment A. [21-2]

[16]   See Affidavit of Roy Lathrop attached as [21-2] and Attachment A thereto.

[17]   See Defendants' Exhibit 1, Attachment B at p. 1. [21-2]

[18]   See Defendants' Exhibit 1, Attachment B at p. 2. [21-2]

18, 2002, that he was positive for Hepatitis C, the disease which he claims he contracted due to the actions of Ms. Tuten.

The court notes that Dr. Vendel's treatment notes regarding Plaintiff on March 18, 2002[19] are as follows: Dr. Vendel stated that "he discussed with Mr. Hoffman that he had tested positive for Hepatitis C on the initial screening test and explained that he was having a confirmatory Recombinant Immunoblot Assay ("RIBA") test to confirm the initial diagnosis and determine the genotype of the disease, as that has an impact on what treatment, if any, is available... At that time, as indicated on the March 18, 2002, medical record, Mr. Hoffman was given patient education and he indicated he understood."[20]

In summary, Plaintiff knew as of March 1, 2002, and at the latest, on March 18, 2002, that he was positive for Hepatitis C, and the limitations period began to run on that date, and expired three years later, in March 2005. Because this action was filed June 21, 2005, it is recommended that it be dismissed as it was filed after the expiration of the statute of limitations.

## Qualified Immunity

Even if Plaintiff's suit were to have been timely filed, the Defendants herein would be entitled to qualified immunity. Federal government officials performing discretionary functions are entitled to qualified immunity from liability for civil damages to the extent that "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Wilson v. Layne*, 526 U.S. 603, 609 (1999) (internal quotations omitted). "A court evaluating a claim of qualified immunity must first determine whether the plaintiff has

---

[19] *See* Defendants' Exhibit A.

[20] *Id.*

alleged the deprivation of an actual constitutional right at all, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation." *Harlow v. Fitzgerald*, 457 U.S. at 818.

In the context of a *Bivens* action, the qualified immunity defense is "an immunity from suit rather than a mere defense from liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). In recognition of this, the Supreme Court has repeatedly stressed the desirability to resolve the qualified immunity issues at the earliest stage of litigation. *Hunter v. Bryant*, 502 U.S. 224, 227 (1991). Once a defendant asserts the defense of qualified immunity, a plaintiff cannot maintain a *Bivens* action against a federal official in his individual capacity unless the plaintiff can prove that the defendant violated a clearly established constitutional right. *Siegert v. Gilley*, 500 U.S. 226, 231-32 (1991).

In the present case, even assuming that Plaintiff had timely filed this suit, he cannot establish that the conduct of any defendant violated a constitutional right. He claims the Defendants acted negligently. Mere negligence does not state a valid constitutional claim. *Daniels, supra*. To the extent the claim is construed as alleging an Eighth Amendment violation, Plaintiff would have to prove that the Defendants were deliberately indifferent to known serious medical need. At this juncture, he has, with respect to the allegation of failure to treat his condition, alleged nothing more than a disagreement with a medical decision. As discussed, infra, that is insufficient to state a claim under the Eighth Amendment. Therefore, the Defendants are entitled to qualified immunity and the case must be dismissed.



Even if Plaintiff had timely filed his action, the court nevertheless would recommend that it be dismissed. To the extent that Plaintiff is alleging that Defendants were negligent or their actions constituted medical malpractice, his claims must fail. Negligence, in general, is not actionable under 42 U.S.C. § 1983 or under the *Bivens* doctrine. *See Daniels*

*v. Williams*, 474 U.S. 327, 328-336 & n. 3 (1986); *Davidson v. Cannon*, 474 U.S. 344, 345-348 (1986); *and Ruefly v. Landon*, 825 F.2d 792, 793-94 (4th Cir.1987). Furthermore, neither Section 1983 nor the *Bivens* doctrine impose liability for violations of duties of care arising under state law. *See DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189, 200-203 (1989). Additionally, medical malpractice is not actionable under Section 1983. *Estelle v. Gamble*, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). To the extent that Plaintiff's allegations concern his disagreement with the provided medical treatment, he fails to show a constitutional violation. "Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice." *Jackson v. Fair*, 846 F.2d 811, 817 (1st Cir.1988). The provision of medical care by prison officials is not discretionary, but the type and amount of medical care is discretionary. *See Brown v. Thompson*, 868 F.Supp. 326 (S.D.Ga. 1994).

Finally, to the extent this claim is construed as arising under the Eighth Amendment, Plaintiff's action still cannot survive. In order to establish a violation of the Eighth Amendment for inadequate medical care, a plaintiff must show that the defendants were deliberately indifferent to his serious medical needs. *Wilson v. Seiter*, 501 U.S. 294, 297 (1991). "To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990). Thus, even if Plaintiff could surmount the statute of limitations issue, and even if he were to be able to prove that he did not receive adequate medical care for his Hepatitis C, he still could not prevail. "[A]n inadvertent failure to provide adequate medical care cannot be said to constitute 'an unnecessary and wanton



infliction of pain[.]" *Estelle v. Gamble*, 429 U.S. 97, 105 (1976). Neither negligence nor malpractice constitutes willful or wanton indifference to a prisoner. *Id.* at 106. Plaintiff has not set forth any evidence, but for bald allegations, that the Defendants were deliberately indifferent to his health care needs.

### State Law Claims

From this court's review of Plaintiff's civil cover sheet, it appears that Plaintiff also may be attempting to assert claims under South Carolina law. As discussed above, Plaintiff has failed to show that Defendants violated his rights under Section 1983. Therefore, it is recommended, pursuant to 28 U.S.C. § 1367(c)(3), that any state law claims be dismissed.

### RECOMMENDATION

Based upon the foregoing, it is recommended that the **Defendants' Motion to Dismiss [21-1] should be granted**; Plaintiff's Motion to add a Defendant **[30-1] should be deemed moot**; and Plaintiff's Motion for Summary Judgment **[30-1] should be denied**.

George C. Kosko
United States Magistrate Judge

May 31, 2006
Charleston, South Carolina

### Notice of Right to File Objections to Magistrate Judge's "Report and Recommendation"
### & The Serious Consequences of a Failure to Do So

The parties are hereby notified that any objections to the attached Report and Recommendation (or Order and Recommendation) must be filed within **ten (10) days** of its service. 28 U.S.C. § 636 and Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three days for filing by mail. Fed. R. Civ. P. 6. Based thereon, this Report and Recommendation, any objections thereto, and the case file will be **delivered to a United States District Judge** fourteen (14) days after this Report and Recommendation is filed. Advance Coating Technology, Inc. v. LEP Chemical, Ltd., 142 F.R.D. 91, 94 & n. 3, (S.D.N.Y. 1992). A magistrate judge makes only a recommendation, and the authority to make a final determination in this case rests with the United States District Judge. *See* Mathews v. Weber, 423 U.S. 261, 270-271 (1976); and Estrada v. Witkowski, 816 F. Supp. 408, 410 (D.S.C. 1993).

During the period for filing objections, but not thereafter, a party must file with the Clerk of Court specific, written objections to the Report and Recommendation, if he or she wishes the United States District Judge to consider any objections. **Any written objections must *specifically identify* the portions of the Report and Recommendation to which objections are made *and* the basis for such objections.** *See* Keeler v. Pea, 782 F. Supp. 42, 43-44 (D.S.C. 1992); and Oliverson v. West Valley City, 875 F. Supp. 1465, 1467, (D.Utah 1995). Failure to file specific, written objections shall constitute a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the United States District Judge. *See* United States v. Schronce, 727 F.2d 91, 94 & n. 4 (4th Cir.) 1984, *cert. denied*, Schronce v. United States, 467 U.S. 1208 (1984); and Wright v. Collins, 766 F.2d 841, 845-847 & nn. 1-3 (4th Cir. 1985). Moreover, if a party files specific objections to a portion of a magistrate judge's Report and Recommendation, but does not file specific objections to other portions of the Report and Recommendation, that party waives appellate review of the portions of the magistrate judge's Report and Recommendation to which he or she did not object. In other words, a party's failure to object to one issue in a magistrate judge's Report and Recommendation precludes that party from subsequently raising that issue on appeal, even if objections are filed on other issues. Howard v. Secretary of HHS, 932 F.2d 505, 508-509 (6th Cir. 1991). *See also* Praylow v. Martin, 761 F.2d 179, 180 n. 1 (4th Cir. 1985)(party precluded from raising on appeal factual issue to which it did not object in the district court), *cert. denied*,

474 U.S. 1009 (1985). In Howard, supra, the Court stated that general, non-specific objections are *not* sufficient:

> **A general objection to the entirety of the [magistrate judge's] report has the same effects as would a failure to object. The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the [magistrate judge] useless. * * * This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act. * * * We would hardly countenance an appellant's brief simply objecting to the district court's determination without explaining the source of the error.**

*Accord* Lockert v. Faulkner, 843 F.2d 1015, 1017-1019 (7th Cir. 1988), where the Court held that the appellant, who proceeded *pro se* in the district court, was barred from raising issues on appeal that he did not specifically raise in his objections to the district court:

> **Just as a complaint stating only 'I complain' states no claim, an objection stating only 'I object' preserves no issue for review. * * * A district judge should not have to guess what arguments an objecting party depends on when reviewing a [magistrate judge's] report.**

*See also* Branch v. Martin, 886 F.2d 1043, 1046 (8th Cir. 1989)("no de novo review if objections are untimely or general"), which involved a *pro se* litigant; and Goney v. Clark, 749 F.2d 5, 7 n. 1 (3rd Cir. 1984)("plaintiff's objections lacked the specificity to trigger *de novo* review").

**This notice, hereby, apprises the parties of the consequences of a failure to file specific, written objections.** *See* Wright v. Collins, supra; and Small v. Secretary of HHS, 892 F.2d 15, 16 (2nd Cir. 1989). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections addressed as follows:

**Larry W. Propes, Clerk**
**United States District Court**
**Post Office Box 835**
**Charleston, South Carolina 29402**
